UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **CYNTHIA A. FISHER**, on behalf of herself and all others similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>**UNUM LIFE INSURANCE COMPANY of AMERICA**,<br><br>Defendant(s) | Civil Action No.<br><br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. Plaintiff Cynthia A. Fisher ("Plaintiff" or "Ms. Fisher") brings this action on behalf of herself and all others similarly situated (the "Class" or "Plaintiffs"), against Defendant Unum Life Insurance Company of America ("Defendant" or "Unum") and involving the administration of a long-term disability insurance policy ("Policy").

2. The headings contained in this Class Action Complaint are intended only to assist in reviewing the statements and allegations contained herein. To avoid the unnecessary repetition in each section, Ms. Fisher and the Class hereby affirm and incorporate each paragraph in each section of this Class Action Complaint as though fully set forth therein.

3. The factual allegations contained in this Class Action Complaint are *not* exhaustive and are provided solely to apprise Defendant of the basis for Ms. Fisher's and the Class' claims, allegations, and requested relief/damages.[1]

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). If additional facts are required, Ms. Fisher

## NATURE of this CASE

4. This lawsuit concerns Unum's practice of terminating and/or limiting payment of long-term disability Policy benefits to individuals suffering from fibromyalgia based on standardized Policy forms – "Self-Reported Symptoms" – used nationwide.

5. The Policy's self-reported benefit limitation, for which Unum bears the burden of proof, is inapplicable where the insured's fibromyalgia is verified using standardized "tests, procedures, or clinical examinations standardly accepted in the practice of medicine." Despite this narrow application, Unum has adopted a claims practice in which it broadly applies the limitation to all claims involving fibromyalgia.

6. Unum has adopted a uniform practice of refusing to accept standardly accepted tests, procedures or clinical examinations – including, but not limited to, the 18 tender point test, clinical examinations, and more recent medical advances such as the FM/a blood test. Unum's claim practices treat fibromyalgia as being subject to the "self-reported symptoms" limitation without investigation of the disability's primary etiology.

7. Unum's claims personnel are instructed to consult with Unum's legal staff (a "DLR") when applying the limitation to fibromyalgia claims. An excerpt from Unum's claims manual confirms the focus on Unum's financial interests:

> "Because disabilities related to fibromyalgia have resulted in differing legal standards in various jurisdictions, consult a DLR prior to applying the … Self-Reported Symptom limitation to a claim based on fibromyalgia."

8. Despite Unum recognizing "the complicated nature of a fibromyalgia diagnosis," Unum's claims personnel are directed to focus on resources that can be helpful in applying the

---

requests and reserves the right to amend this pleading so her claims are resolved on the merits.

contractual limitations – again focusing on Unum's own financial interests at the expense of the insured participants. As already noted, the initial and primary resource is Unum's legal department – a DLR.

9. Unum is acting as an ERISA fiduciary in the administration of disability claims, and as such, is obligated to consistently apply the Policy terms – including the limitation – to all insured participants nationwide. This includes complying with prior judicial rulings. In 2011, the U.S. Court of Appeals for the Seventh Circuit held Unum's general application of the "Self-Reported Symptoms" limitation to disability claims based on a fibromyalgia diagnosis was both improper and contrary to the Policy terms. *See Weitzenkamp v. Unum Life Insurance Company of America*, 661 F.3d 323 (7th Cir. 2011).

> "[T]he only viable conclusion is that the self-reported symptoms limitation applies to disabling illnesses or injuries that are *diagnosed* primarily based on self-reported symptoms rather than to all illnesses or injuries for which the *disabling symptoms* are self-reported. The contrary interpretation advanced by Unum would sweep within the limitation virtually all diseases, leaving only a small subset for coverage beyond that time period.
>
> … The remaining question is whether the diagnosis of disabling fibromyalgia in the present case was based primarily on Weitzenkamp's self-reported symptoms or on objective medical evidence. Weitzenkamp was diagnosed following the 18-point "trigger test" for the condition. We have recognized that the trigger test can "more or less objectively" establish the disease where the findings of the test are consistent with fibromyalgia.
>
> … Significantly, even Unum does not dispute that the diagnosis is objectively verifiable. Because the disabling illness in this case, fibromyalgia, is not primarily based on self-reported symptoms, but rather can be based on the verifiable evidence of its manifestations, the self-reported symptoms limitation does not apply in this case."

*Id.* at 330-331.

10. Subsequent to the *Weitzenkamp* decision, and in direct contravention to the holding, Unum has continued to terminate disability claims, where the insured has been

diagnosed with fibromyalgia, based on the "Self-Reported Limitation." Unum's actions have affected Ms. Fisher, as well as all other insured participants suffering from the debilitating effects of fibromyalgia. Injunctive and declaratory relief is the only avenue available to Ms. Fisher and the Class to remedy Unum's ongoing conduct.

## PARTIES

11. Plaintiff Cynthia A. Fisher resides in Marysville, Union County, Ohio. At all times relevant to this Class Action Complaint, Ms. Fisher was, and remains, insured under the Policy that is subject of this lawsuit.

12. Defendant Unum Life Insurance Company of America is the insurer for the Policy. Unum is registered with the Ohio Department of Insurance to sell its insurance coverage, including the Policy, throughout the State of Ohio, pursuant to NAIC#62235. Unum is the claim administrator and fiduciary for the Policy – responsible for administering the Policy benefits (plan assets) through its claims department and liable for payment of the Policy benefits (plan assets).

## JURISDICTION & VENUE

13. This Court has Federal Question subject matter jurisdiction over the claims asserted in this action, which seek all available monetary and equitable relief, pursuant to 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1) and § 1132(f).

14. Venue is appropriate in the United States District Court for the Southern District of Ohio pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391. Ms. Fisher is a citizen in this District. Further, the insurance coverage at issue and her claims arose within this District. Finally, Defendant may be found in this District.

15. Intra-district assignment to the Eastern Division is appropriate given Ms. Fisher resides in Marysville, Union County, Ohio.

## FACTUAL ALLEGATIONS

16. While employed by BRC Properties, Inc., Ms. Fisher was covered by a group long-term disability insurance policy issued by Unum – the Policy.

17. The Policy was comprised of various standardized forms used by Unum nationwide in similar group long-term disability insurance policies – specifically, a limited pay period for disabilities primarily based on "self-reported symptoms."

18. The following language is illustrative of Unum's standardized policy form utilized through the State of Ohio, as well as nationwide.

- **WHAT DISABILITIES HAVE A LIMITED PAY PERIOD UNDER YOUR PLAN?** The lifetime cumulative maximum benefit period for all disabilities due to **mental illness** and disabilities based primarily on **self-reported** symptoms is 24 months. (Form LTD-BEN-7).

- **SELF-REPORTED SYMPTOMS** means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy. (Form GLOSSARY-4).

19. Ms. Fisher was diagnosed with fibromyalgia and, based on her resulting functional limitations, applied for long-term disability benefits under the Policy. Unum accepted Ms. Fisher's fibromyalgia diagnosis, as well as her functional limitations, and approved her claim for long-term disability benefits under the Policy.

20. Unum provided Ms. Fisher with the requisite Policy long-term disability benefits for the next twenty-four (24) months, but terminated any further benefits based on the Policy's limited pay period for "self-reported symptoms."

21. As part of its custom and practice, prior to terminating her long-term disability benefits, Unum did *not* investigate whether Ms. Fisher's disability – her fibromyalgia – was based primarily on her self-reported symptoms. Instead, using stock language from its claims department, Unum summarily concluded that because Ms. Fisher suffered from fibromyalgia her disability benefits were subject to the limited pay period for self-reported symptoms.

> "Your policy has a limitation for disabilities due to mental illness and disabilities based primarily on self reported symptoms. Based on the information we have on file, you are limited to a maximum of 24 months of benefits. Your benefits started on February 20, 2014 for your condition of fibromyalgia and chronic fatigue. You have reached the maximum duration for benefits for this condition on February 20, 2016. Because your claim is subject to this limitation and we have now provided 24 months of benefits, we will stop paying benefits on your claim as of February 20, 2016."

22. Unum has a pattern and practice of not performing an investigation of disability claims based on the physical manifestations – and resulting functional limitations – of fibromyalgia. Instead, Unum limits its claims personnel from using resources and financial resources to those insureds who subsequently file an appeal – a number far less than those filing claims. As a result, Unum's financial interests are advanced at the expense of its insureds who are systemically deprived of a full-and-fair review.

23. Unum applied this same pattern and practice – not providing a full-and-fair review – to Ms. Fisher when it summarily terminated her long-term disability benefits based on the "self-reported symptoms" limitation.

24. Ms. Fisher appealed Unum's decision. On appeal, Unum again concluded her long-term disability benefits were subject to the "self-reported symptoms" limitation and upheld its decision.

25. In support of its appeal decision, Unum refused to accept Ms. Fisher's verified testing and examination standardly accepted in the practice of medicine. Despite Ms. Fisher's treating and examining physician performing the 18-point tender point (sometimes referred to as trigger point) test which confirmed Ms. Fisher's diagnosis and functional limitations, Unum refused to accept the test results stating that "the tender point testing used as criteria for the Fibromyalgia diagnosis is itself based on your subjective reports." Unum further refused to accept Ms. Fisher's "FM/a test" results, concluding the test was "not standardly accepted in the practice of medicine" and "not cleared or approved by the FDA."

26. Unum's pattern and practice of disregarding the 18-point tender point test has previously been made by Unum and expressly rejected at trial. In *Weitzenkamp v. Unum Life Insurance Company of America*, 661 F.3d 323 (7th Cir. 2011), Unum's claim practice of limiting disability claims for fibromyalgia were improper and contrary to the terms of the Policy.

> "[T]he only viable conclusion is that the self-reported symptoms limitation applies to disabling illnesses or injuries that are *diagnosed* primarily based on self-reported symptoms rather than to all illnesses or injuries for which the *disabling symptoms* are self-reported. The contrary interpretation advanced by Unum would sweep within the limitation virtually all diseases, leaving only a small subset for coverage beyond that time period.
>
> … The remaining question is whether the diagnosis of disabling fibromyalgia in the present case was based primarily on Weitzenkamp's self-reported symptoms or on objective medical evidence. Weitzenkamp was diagnosed following the 18-point "trigger test" for the condition. We have recognized that the trigger test can "more or less objectively" establish the disease where the findings of the test are consistent with fibromyalgia.
>
> … Significantly, even Unum does not dispute that the diagnosis is

> objectively verifiable. Because the disabling illness in this case, fibromyalgia, is not primarily based on self-reported symptoms, but rather can be based on the verifiable evidence of its manifestations, the self-reported symptoms limitation does not apply in this case."

*Id.* at 330-331.

27. Unum's systemic disregard of generally accepted testing protocol for fibromyalgia – specifically the tender point test – was confirmed in Unum's internal claim systems:

> "EE does not think fibro should be considered a SR condition. EE says she has had a touch point test done and she has met 12 of 18 criteria. IAC[2] that since there are no specific diagnostic tests, we do consider fibro SR."

28. Unum's systemic treatment of fibromyalgia as being subject to the "Self-Reported Symptoms" limitation was also confirmed in Unum's internal claim systems:

> "[T]he EE's R/Ls are due to her sx of fibromyalgia…. Impairment resulting from th[is] sx [is] subject to the policy limitation on disability based primarily on SR symptoms."

29. Further, Unum's systemic use of its legal department as a resource for applying the limitation to terminate disability claims was also confirmed in Unum's internal claim systems:

> "Since it has been greater than 1 year since legal comment, recommend DLR regarding whether SR limit can still be applied to the sx associated with Fibromyalgia …"

30. Consistent with the ERISA claim regulations, Ms. Fisher exhausted her procedural remedies – filing the requisite appeal, which Unum denied.

## CLASS ALLEGATIONS

31. Ms. Fisher brings this action on behalf of herself and as a class action under the

---

[2] "IAC" is Unum's claim manual acronym for "I advised caller."

provision of Fed.R.Civ.P. 23 on behalf of all members of a class (the "Class") defined as follows:

> During the applicable limitations period, all individuals insured under a group long-term disability insurance policy issued by Unum Life Insurance Company of America who: (i) were approved for disability benefits based on a diagnosis of fibromyalgia; and (ii) whose fibromyalgia disability benefits were subsequently limited as "Self-Reported Symptoms."

32. The Class consists of persons residing throughout the State of Ohio, and nationwide, and is sufficiently numerous such that individual joinder is neither feasible nor practical in this Court. The disposition and resolution of the Class members' similar claims in this action will provide substantial benefits to the parties and the Court by making more efficient use of limited resources including time and costs. The exact number and identity of the Class members will be properly determined through discovery. However, it is expected that the Class size will readily exceed one hundred (100). *See* Fed.R.Civ.P. 23(a)(1).

33. There is a well-defined community of interest in the questions of law and fact presented by Ms. Fisher's and the Class' claims. Both Ms. Fisher and the Class members suffered the same injury – the limitation of their disability benefits based on Unum's systemic treatment of fibromyalgia as subject to the "Self-Reported Symptoms" limitation. Resolution of the claims alleged in this Class Action Complaint are dependent upon common questions of and fact – relating to the same Policy terms and administrative practices – thus allowing a common resolution for the Class. *See* Fed.R.Civ.P. 23(a)(2).

34. Ms. Fisher's claims arise under the same Policy terms utilized by Unum in the State of Ohio, as well as nationwide, and the same applicable law and regulations – ERISA and the Department of Labor Claim Regulations. *See* 29 U.S.C. §1001, et. seq.; 29 CFR 2560.503-1; *Weitzenkamp v. Unum Life Insurance Company of America*, 661 F.3d 323 (7th Cir. 2011). The

Policy terms, and applicable law, are typical to both Ms. Fisher and the Class – involving the same claims, defenses, and legal theories. *See* Fed.R.Civ.P. 23(a)(3).

35. As evidenced by her willingness to bring this lawsuit, Ms. Fisher's interests are aligned with those of the Class – seeking relief for Unum's improper application of the "Self-Reported Symptoms" limitation to fibromyalgia disability claims. Ms. Fisher is willing to represent both her interests but also the interests of the Class and has retained qualified and experienced counsel to vigorously pursue the Class claims. Ms. Fisher can and will fairly and adequately represent and protect the Class' interests. *See* Fed.R.Civ.P. 23(a)(4).

36. The claims herein are properly suited for Class resolution because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications – resulting in incompatible standards with respect to Unum's application of the "Self-Reported Symptoms" limitation to fibromyalgia disabilities. Further, separate adjudications would be dispositive of the interests of non-party Class members resulting in substantial impairment or impediment to their interests as Kentucky insured participants. *See* Fed.R.Civ.P. 23(b)(1).

37. The claims herein are properly suited for Class resolution because Unum has acted and continues to act on grounds generally applicable to the Class – improperly limiting fibromyalgia disability benefits based on the "Self-Reported Symptoms" limitation – making final injunctive and/or declaratory relief appropriate for the Class as a whole. *See* Fed.R.Civ.P. 23(b)(2).

38. The claims herein are further properly suited for Class resolution because common questions of fact and law applicable to the Class' claims – concerning Unum's improper application of the "Self-Reported Symptoms" limitation to fibromyalgia disabilities –

predominate over any individual questions, making Class resolution a superior method for fairly and efficiently adjudicating this lawsuit. *See* Fed.R.Civ.P. 23(b)(3).

39. Given the Class members are disabled and generally of limited financial means, the burden of filing separate actions is neither desirable nor practical. Class members' interests are aligned with Ms. Fisher and there would be limited interest in pursuing separate and duplicative actions.

40. It is desirable to concentrate the litigation of Ms. Fisher's and the Class' claims in this forum. The determination of the claims for all Class members in a single forum, and in a single proceeding would be a fair and efficient means of resolving the issues in this litigation.

41. The difficulties, if any, likely to be encountered in the management of this lawsuit as a Class action are reasonably manageable, especially when weighed against the virtual impossibility of affording adequate relief to the members of the Class through multiple separate proceedings and actions.

## INDIVIDUAL & CLASS CLAIMS

**A.     DENIAL OF POLICY BENEFITS.**

42. As the entity responsible for administering and paying Policy disability claims, as well as responsible for developing internal claims practices and policies to facilitate such determinations, Unum is an ERISA fiduciary.

43. As an ERISA fiduciary, Unum is required to discharge its duties solely in the interests of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and paying reasonable expenses of administering the plan. It must do so with reasonable care, skill, prudence, and diligence and in accordance with the

terms of the plans it administers – the Policy. It must conform its conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insureds.

44. Unum violated these duties by promulgating an internal claims practice of systemically applying the "Self-Reported Symptoms" limitation to fibromyalgia disabilities – contrary to the Policy terms, and applicable binding legal precedent. Unum's practices also improperly disregarded, and misrepresented, the generally accepted medical procedures and testing applicable to the diagnosis and treatment of fibromyalgia. In so doing, Unum did not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." It did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity. It did not act in accordance with the Policy terms. Instead, Unum placed its financial interests above the interests of Ms. Fisher and the Class of insured participants.

45. Unum's failure to comply with the Policy terms, and applicable law, has damaged and continues to damage Ms. Fisher and the Class.

46. ERISA provides that Ms. Fisher and the Class may bring an action to recover the Policy benefits improperly withheld based on Unum's improper application of the "Self-Reported Symptoms" limitation to their fibromyalgia disability claims, as well as to enforce their rights under the Policy including clarifying their right to future benefits. *See* 29 U.S.C. §1132(a)(1)(B).

**B.  APPROPRIATE EQUITABLE RELIEF.**

47. As previously addressed, Unum's systemic claims processes are contrary to the Policy terms and applicable law. Unum's failure to comply with either is indicative of a breach of its fiduciary obligations to Ms. Fisher and the Class.

48. ERISA provides that Ms. Fisher and the Class may bring an action to correct (abate) Unum's systemically flawed claims practices – relating to the "Self-Reported Symptoms" limitation – by enjoining the improper practices and by obtaining other appropriate equitable relief (apart from Policy benefits) to include equitable surcharge and make-whole relief – thereby preventing Unum from being unjustly enriched at Ms. Fisher's and the Class' expense. *See* 29 U.S.C. §1132(a)(3)(A) and §1132(a)(3)(B).

C.   **ATTORNEYS' FEES & COSTS.**

49. ERISA also provides that Ms. Fisher and the Class may recover as matter of right their attorneys' fees and costs reasonably expended in this lawsuit to obtain relief as to their claims – which would encompass any degree of success. *See* 29 U.S.C. §1132(g).

### REQUESTED RELIEF

**WHEREFORE**, Ms. Fisher respectfully prays that this Court grant the following relief:

50. Find this action satisfies the requirements of Fed.R.Civ.P. 23(a), certify it as a Class Action under Fed.R.Civ.P.23(b)(1), (2), and/or (3), appoint Ms. Fisher to represent the Class, and appoint the undersigned as Class counsel;

51. Enter final judgment against Unum, and in favor of the Class, as to each claim asserted herein, and award all available legal, equitable, declaratory, injunctive, and pecuniary/punitive relief;

52. Order Unum to pay the Class all expenses incurred in, and relating to, their prosecution of this action including but not limited to experts;

53. Award the Class pre- and post-judgment interest at the greater of 12% compounded monthly, or the actual rate earned to prevent Unum's unjust enrichment; and

54. Provide leave to amend where, and as, appropriate.

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| Date: June 5, 2018 | Respectfully Submitted, |
| | s/ W. Kash Stilz, Jr. |
| | Michael D. Grabhorn[3] |
| | *m.grabhorn@grabhornlaw.com* |
| | Andrew M. Grabhorn |
| | *a.grabhorn@grabhornlaw.com* |
| | Grabhorn Law \| Insured Rights™ |
| | 2525 Nelson Miller Parkway, Suite 107 |
| | Louisville, KY 40223 |
| | p: (502) 244-9331 |
| | f: (502) 244-9334 |
| | |
| | W. Kash Stilz, Jr. |
| | *kash@roushandstilzlaw.com* |
| | 19 West Eleventh Street |
| | Covington, KY 41011 |
| | p: (859) 291-8400 |
| | f: (859) 291-6555 |
| | |
| | *Counsel for Plaintiff Cynthia A. Fisher and the Putative Class* |

---

[3] Pro hac vice motions forthcoming.